**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


COWAN SYSTEMS, INC.                        :
                                           :
                                           :
        v.                                 :        Civil No. CCB-05-217
                                           :
HARLEYSVILLE MUTUAL INSURANCE              :
CO.                                        :


<u>**MEMORANDUM**</u>

Now pending before the court are cross-motions for summary judgment in this

declaratory judgment action. The issues have been fully briefed and no hearing is necessary.

Local Rule 105.6. For the reasons that follow, the defendant's motion will be denied and the

plaintiff's motion will be granted.

**BACKGROUND**

The defendant, Harleysville Mutual Insurance Company ("Harleysville"), issued a

Commercial General Liability policy (" the policy") to the plaintiff, Cowan Systems, Inc.,

("Cowan"), effective November 1, 2000 to November 1, 2001.  (Plf.'s Mem. in Opp'n. at Ex. 1,

the policy.)[1]  The policy was in effect on January 9, 2001, the date on which George J. Shaffer

("Shaffer") alleged that he was injured while on property owned, operated, and maintained by

Erdner Brothers Inc., and leased by Linens N Things. (<u>Id</u>. at Ex. 2, Shaffer complaint.)  Shaffer

was employed as a tractor-trailer driver for Cowan. Cowan supplied tractor-trailer drivers to

---

[1] In citing to the record, the court is relying on the paper copies filed with the court. The labeling of exhibits reflected in the electronically filed version on CM/ECF may not correspond with either this opinion or the citations to the record made by the parties in their respective pleadings.

Linens N Things to move Linens N Things' empty trailers to a temporary staging lot. On January

9, 2001, after dropping off an empty trailer at the lot in question, Shaffer fell as he was

attempting to get back into the cab of the truck. (See Def.'s Mem.in Supp. of Summ. J. at Ex. 3,

interrogatories.)  Subsequently, in December of 2002, Shaffer filed a personal injury lawsuit in

the Superior Court of New Jersey, Gloucester County, against Linens N Things and Erdner

Brothers Inc., titled George Shaffer, et al v. Linens N Things, et al, Docket Number: L-2160-02

("Shaffer")(Plf.'s Mem. in Opp'n. at Ex. 2, Shaffer complaint.) The complaint in Shaffer alleged

that the defendants failed to properly maintain and supervise the lot, failed to comply with

ordinary and customary safety procedures, carelessly and negligently failed to provide for

removal of snow and ice, and failed to provide any guards, light or other device to warn of

unsafe conditions. (Id.) The complaint further alleged that Shaffer's injuries were the direct and

proximate result of  the defendants' negligence. (Id.)  Shaffer's complaint did not name as a

defendant, nor make an attribution of fault to, Cowan Systems, Inc.

        In September of 2004, Linens N Things filed a third party complaint against Cowan in

Shaffer. (Plf.'s Mem. in Opp'n. at Ex.3, third party complaint.)  In Count I of the third party

complaint, Linens N Things alleged that "it is entitled to insurance coverage, a defense,

indemnification and to be held harmless by Harleysville Insurance Company and Cowan

Systems, Inc. through their (Cowan's) contract with Linens N Things and through a policy of

insurance issued to Cowan Systems Inc."  (Id. ¶ 3.)  In Count II, Linens N Things alleged that

"third-party defendants Harleysville Insurance Company and Cowan Systems, Inc. are Joint

Tortfeasors and this defendant/third-party plaintiff demands Joint Tortfeasor Contribution...and

apportionment of negligence." (Id. ¶ 5)

2

Cowan, pursuant to the policy issued by Harleysville, sought a defense of the third party complaint. Harleysville, in October of 2004, denied Cowan coverage under the policy, claiming that exclusions under the policy applied and Harleysville thus had no duty to defend. (Plf.'s Mem. in Opp'n at Ex. 5, Oct. 25 letter.)  The initial October 25, 2004 denial letter was reiterated by a November 4, 2004 letter which indicated that the denial was based on evidence obtained from Shaffer's Answers to Interrogatories and recorded statements in <u>Shaffer</u>. (Plf.'s Mem. in Opp'n at Ex. 4, Nov. 4 letter.)

Cowan retained counsel at its own expense in <u>Shaffer</u> and successfully defended the suit. Summary judgment on the third party complaint was granted on April 29, 2005.  (Def.'s Answer and Countercl. at Ex. 1, <u>Shaffer</u> order.)  In December of 2004, after the denial of coverage by Harleysville, but prior to the resolution of the third party complaint, Cowan, through a declaratory judgment action in the Circuit Court for Anne Arundel County, Maryland, sought a declaration that Harleysville did have a duty to defend under the policy.[2]  That case was removed to this court on January 25, 2005.

The policy in question states that:

> We will pay those sums that the insured become legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)  Harleysville maintains that three exclusions

---

[2]As Cowan successfully defended the third party complaint in <u>Shaffer</u>, it is not seeking indemnification for any judgment under the policy.  Rather, Cowan seeks a declaration that Harleysville had a duty to defend Cowan in <u>Shaffer</u>, thus entitling Cowan to the fees and costs of both defending <u>Shaffer</u> and bringing this declaratory judgment action.

contained in the policy removed any obligation Harleysville might otherwise have had to defend

Cowan: the "workers compensation exclusion," the "employer's liability exclusion," and the

"auto liability exclusion."  In turn, Cowan argues that the exclusions are inapplicable.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of <u>some</u> alleged
> factual dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that there be no
> <u>genuine</u> issue of <u>material</u> fact.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" <u>Bouchat v. Baltimore Ravens Football Club,</u>

<u>Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 644-45 (4th Cir. 2002),

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." <u>Bouchat</u>, 346 F.3d at 526 (internal

quotation marks omitted) (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986)).

## I.

This case requires the court to determine whether Harleysville had a duty to defend

Cowan in the underlying <u>Shaffer</u> lititgation. The question is to be decided under Maryland law.

In Maryland, the duty to defend is considered a fundamental feature of commercial liability

insurance policies. <u>See</u> <u>Brohawn v. Transamerica Ins. Co.</u>, 276 Md. 396, 409-410 (Md.

1975)("Although the type of policy here considered is most often referred to as liability

insurance, it is 'litigation insurance' as well, protecting the insured from the expense of

defending suits brought against him."). To determine whether there is a duty to defend the

insured, a two-part inquiry applies:

> 1) What is the coverage and what are the defenses under the terms and
> requirements of the insurance policy? 2) Do the allegations in the underlying
> action potentially bring the tort claim within the policy's coverage?

<u>Aetna Cas. & Sur. Co. v. Cochran</u>, 337 Md. 98, 103-104 (Md. 1995)(quoting <u>St. Paul Fire &</u>

<u>Mar. Ins. v. Pryseski</u>, 292 Md. 187 (Md. 1981)).

Until modified by <u>Cochran</u>, the rule for applying this test, known as the "eight corners"

rule, limited the court to reviewing the underlying complaint and the insurance policy to

determine the "potentiality" of coverage.  <u>See</u> <u>Nationwide Ins. Cos. v. Rhodes</u>, 127 Md.App.

213, 241 (Md. Ct. Spec. App. 1999). <u>Cochran</u> modified the rule, holding that when the complaint

fails to clearly establish coverage, the insured could look also to extrinsic evidence to

demonstrate the potential for coverage. <u>Cochran</u>, 337 Md. at 107-108.  The insurer, however,

remains barred from offering extrinsic evidence to contest coverage.  <u>Id</u>.; <u>see also</u> <u>Montgomery</u>

Cnty. Bd. of Educ. v. Horace Mann Ins. Co., 154 Md.App. 502, 510-511 (Md. Ct. Spec. App. 2003), aff'd, 383 Md. 527 (Md. 2004).

This distinction in the ability to call upon extrinsic evidence has been explained as serving to protect the insured from deficient complaints filed by third-parties. See Montgomery Cnty. Bd. of Educ., 154 Md.App. at 511.  It also allows a greater opportunity to obtain the representation that was part of the bargain reached by the parties under the policy. See id. Moreover, this distinction is consonant with the principle, often repeated in the caselaw, that liability insurance is fundamentally also "litigation insurance." See Brohawn, 276 Md. at 409-410.  As stressed in Baltimore Gas & Elec. v. Commercial Union Ins. Co., 113 Md. App. 540, 568 (Md. Ct. Spec. App. 1997), it protects the insured from having to prove to its insurer that it "is, in fact, liable to the tort plaintiff under a theory covered by the policy, in order to obtain the insurer's assistance in defending the insured against the same allegation."

 In applying this framework, the courts also have stressed  the importance of distinguishing between the insurer's duty to indemnify and its duty to defend. The critical distinction is that the duty to defend is to be determined upon the facts as alleged, whereas the duty to indemnify will logically depend on liability. See Walk v. Hartford Cas. Ins. Co., 382 Md. 1, 15 (Md. 2004).  Thus, the duty to defend is broader than the duty to indemnify and exists even where there is just a potentiality that the claim may be covered by the policy. Id. at 15-16 (quoting Brohawn, 276 Md. at 407-408).  "Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer must still defend if there is a potentiality that the claim could be covered by the policy".  Brohawn, 276 Md. at 407-408.  Maryland courts have found the duty to exist even where the claim asserted against the

insured cannot possibly succeed. <u>BGE Home Prods. & Servs., Inc. v. Owens</u>, 377 Md. 236, 246

(Md. 2003)(quoting <u>Litz v. State Farm</u>, 346 Md. 217, 225 (Md. 1997)). Moreover, if *any* claims

potentially come within the policy coverage, the insurer is obligated to defend *all* claims. <u>Utica</u>

<u>Mut. Ins. Co. v. Miller</u>, 130 Md.App. 373, 383 (Md. Ct. Spec. App. 2000).

It is well-settled that any doubt about the potentiality of coverage is resolved in favor of

the insured.  <u>See</u> <u>Hartford Cas. Ins. Co. v. Chase Title, Inc.</u>, 247 F.Supp.2d 779, 780 (D.Md.

2003)(citing <u>Chantel Assocs. v. Mount Vernon Fire Ins. Co.</u>, 338 Md. 131, 145 (Md. 1995)); <u>see</u>

<u>also</u> <u>Nationwide Ins. Cos.</u>, 127 Md.App. at 24; <u>Utica Mut. Ins. Co.</u>, 130 Md.App. at 383.

Cognizant that the duty to defend should be construed  liberally in favor of the insured, I will

now take up the policy exclusions claimed by Harleysville to be applicable.

## A.

The policy in question contains an exclusion mandating that the policy does not apply to

"bodily injury" or "property damage" arising out of the ownership maintenance, use, or

entrustment to others of any..."auto"...owned or operated by or rented or loaned to any insured.

(Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)  The exclusion further states that "use" includes

"operation" and "loading or unloading." (<u>Id</u>.)  Relying on Shaffer's deposition testimony,

Harleysville argues that this "auto" exclusion applies, because the accident occurred as he was

attempting to get into his tractor cab shortly after he dropped off an empty trailer for Cowan.

As addressed above, with respect to determining an insurer's duty to defend, as opposed

to the duty to indemnify, the insurer is prohibited from looking to extrinsic evidence to deny

coverage.  <u>See</u> <u>Montgomery Cnty. Bd. of Educ.</u>, 154 Md.App. at 510-511.  Neither Shaffer's

complaint nor Linens N Things' third party complaint  filed in <u>Shaffer</u> alleged that the injury

related  to the use, operation, loading, or unloading of the truck.  Shaffer's complaint alleged that

the conditions at the "mud lot" were the cause of his injury.  (See Plf.'s Mem. in Opp'n. at Ex.2,

Shaffer complaint, and Ex. 3, third party complaint).  Linens N Things, in Count I of its third

party complaint against Cowan and Harleysville, sought insurance coverage, a defense,

indemnification, and to be held harmless based on a contract with Cowan. (Plf.'s Mem. in Opp'n

at Ex. 3 ¶ 3).  In Count II, Linens N Things sought contribution from Cowan and Harleysville as

joint-tortfeasors. (Id. ¶ 5).  Count II merely asserted that they were joint-tortfeasors.  Nowhere in

the third party complaint were there any allegations that the injury arose from the operation or

unloading of the vehicle.

      Moreover, outside of the letters denying coverage and the pleadings filed in this court, it

does not appear that anyone ever put forth a theory that the operation or condition of the

automobile had anything to do, in even a minimal causal sense, with Shaffer's injury.  Even if

such a theory had been put forth at some point in the Shaffer litigation, the eventual emergence

thereof would be irrelevant to Harleysville's duty to defend. Both in its initial letters informing

Cowan of the denial of coverage, and in its motion for summary judgment before this court,

Harleysville stated that it relied on answers to interrogatories, recorded statements, and

deposition testimony in reaching its conclusion to deny coverage.  The insurer's reliance on

extrinsic evidence beyond "the eight-corners" of the policy and complaint in order to deny

coverage is improper. See Montgomery Cnty. Bd. of Educ., 154 Md.App. at 510-511.  It is not

difficult to see the incongruity of relying on information that comes to light during the litigation

to deny the insured a defense of that same litigation under a "litigation insurance" policy.

      The conclusion, however, that the "auto" exclusion does not justify a refusal to defend

need not rest upon the well-settled rule that extrinsic evidence may not be used in the manner

Harleysville used it here.  Even without making a distinction between the permissible "eight

corners" evidence and the impermissible extrinsic evidence cited by Harleysville, Maryland law

and the broader nature of the duty to defend further instructs that the "auto" exclusion does not

apply.

First, Harleysville's reliance on Northern Assurance Company of America v. EDP

Floors, Inc., 311 Md. 217 (Md. 1987), is misplaced.  The import of EDP, like other cases where

similar exclusions were upheld, is to make clear that the operation of the automobile need not be

the sole or proximate cause of the injury in order for the exclusion to apply. Id. at 230-231; see

also Beretta U.S.A. Corp. v. Fed. Ins. Co., 117 F.Supp.2d 489, 494 (D.Md 2000); and  Rubins

Contractors Inc. v. Lumbermens Mut. Ins. Co., 821 F.2d 671, 676 (D.C. Cir. 1987).  The EDP

court held that the "auto" exclusion can apply even when the injury may also be said to have

arisen out of other negligent acts, such as the employer's negligent entrustment or failure to

supervise, so long as the vehicle component remains essential to establish the insured's liability.

EDP, 311 Md. at 226.

In EDP, the injury occurred when an intoxicated employee, attempting to assist with

unloading, operated a hydraulic lift at the rear of the  truck.  Id. at 220.  The dispute over the

exclusion's applicability did not involve a disagreement, as is present in this case, about whether

the automobile was involved at all.  Rather, the dispute was whether the plaintiff's putting forth a

theory of liability based on negligent hiring, retention, and supervision rendered the "auto"

exclusion inapplicable, because hiring, retention, and supervision were distinct from the

operation of the automobile.  Id. at 225.  Because the acts in question are "inseparably associated

9

with the operation, use or unloading of the truck," the EDP court held that applying a proximate cause analysis and looking to other contributory acts, such as negligent supervision, to negate the "auto" exclusion's applicability would be improper. Id. at 231.

Therefore, where the operation of an automobile, or similarly the occurrence of an assault and battery, are indisputably causes of the injury and necessary elements of the cause of action, claims of underlying negligent hiring or entrustment, or other similar claims of negligence, will not defeat the common automobile- and assault and battery-based exclusions. See id. at 226; see also First Fin. Ins. Co. v. GLM, Inc., 88 F.Supp.2d 425 (D. Md. 2000). Cases clarifying as much are common and are relied upon by the defendant here. See EDP, 311 Md. at 226; Rubins, 821 F.2d at 676; Travelers v. Citgo Petroleum, 166 F.3d 761 (5th Cir. 1999); Titan Indem. v. Estes, 825 So.2d 651 (Miss. 2002); A.J. Cameron Sod Farms v. Continental Ins. Co., 700 A.2d 290 (N.H. 2000); Grain Dealers Mut. Ins. v. Pats Reynolds, 492 S.E.2d 702 (Ga. Ct. App. 1997); Massachusetts Bay Ins. v. Unique Presort Servs., 679 N.E.2d 476 (Ill. App. Ct. 1997); Wright v. American States Ins. Co., 765 N.E.2d 690 (Ind. Ct. App. 2002); Meyers v. Mississippi Ins. Guar. Ass'n, 883 So.2d 10 (Miss. 2004). Such a rule, however, does not bring the present case within the exclusion.

Holding that the operation of the automobile need not be the sole or proximate cause is not the same as saying an automobile need merely be present in order for the exclusion to apply. Nor does such a holding even mean that the automobile's "involvement" necessarily triggers the exclusion.[3] More to the point, EDP's holding has no bearing on a dispute over the duty to

---

[3] Cf. Almayor v. State Farm Fire & Casualty Co., 613 So. 2d 526, 527 (Fla. Dist. Ct. App. 1993). In Almayor, the homeowner's policy's "automobile exclusion" did not preclude coverage for severe injuries suffered by an individual who was working on a motor vehicle

defend where, as here, there is significant disagreement over whether the operation or unloading

of the automobile was related to the injury at all.  Harleysville is correct that there are cases

upholding the "auto" exclusion where other acts of negligence were alleged and arguably played

a causal role.  In those cases, however, including the cases cited by Harleysville, the automobile

was actually being driven or unloaded and there was no dispute as to those facts.  See EDP, 311

Md. at 220 (employee actually operating the hydraulic lift on the truck); Rubins, 821 F.2d at

672-73 (employee actually driving the truck and injuring another); Belmonte v. Employers Ins.

Co., 99 Cal.Rptr.2d 661, 662-63 (Cal. Ct. App. 2000)(insured's niece actually driving the van

that struck another); Travelers, 166 F.3d at 764 (collision between insured's oil tanker truck and

automobile); Titan Indem. 825 So.2d at 653 (fire truck struck automobile); Hall v. Auto Owners

Ins., 658 N.W.2d 711, 713 (Neb. 1999)(actual automobile collision); A.J. Cameron Sod, 700

A.2d at 292 (employee fell off the top of cargo stacked on bed of truck); Grain Dealers, 492

S.E.2d at 703 (automobile collision); Massachusetts Bay Ins., 679 N.E.2d at 477 (automobile

collision); Wright, 765 N.E.2d at 692 (death resulting from automobile collision); Meyers, 883

So.2d at 11 (automobile collision); Conduit & Found. Corp. v. Hartford Ins., 746 A.2d 1053,

1054 (N.J. Super. Ct. App. Div. 2000)(automobile accident resulting in death); USF&G v.

---

parked in the insured's driveway. The policy excluded "bodily injury or property damage arising
out of ownership, maintenance, [or] use" of a motor vehicle owned by the insured. An
automobile repairman came to the insured's home to diagnose and perhaps repair her car.  The
repairman siphoned gasoline from the gas tank into a bucket, which he placed next to the steps of
the house. A resident of the house came out with a freshly lit cigarette in his hand, and the
cigarette ignited gasoline fumes, causing fire and explosion. The court found that the car had
little, if anything, to do with the fire. The court explained that the car was merely a coincidental
and legally remote source of gasoline, which was itself harmless until acted upon by the
resident's negligence. Thus, the accident did not "arise out of" ownership, maintenance, or use of
a vehicle but from the resident's allegedly negligent use of flammable material.

Employers Cas., 672 F.Supp. 939, 940 (E.D. La. 1987)(dump truck backed over the top of worker); Columbia Mut. Cas. Ins. Co. v. Coger, 811 S.W.2d 345, 346 (Ark. Ct. App. 1991)(cargo of moving truck fell from truck and collided with other moving vehicle); Okley Trans., Inc. v. Zurich Ins. Co., 648 N.E.2d 1099, 1101 (Ill. App. Ct. 1995)(employee drove truck off the road and into several homes).

Further, similar exclusions have been held inapplicable because the operation or presence of the vehicle had no real causal relationship to the injury, even where the tort occurred inside the vehicle. See Almayor v. State Farm Fire & Casualty Co., 613 So. 2d 526, 527 (Fla. Dist. Ct. App. 1993)(exclusion did not apply to injury caused, in part, by gasoline previously removed from vehicle while vehicle was being repaired in driveway); State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d. 94, 97-98 (Cal. 1973)(exclusion did not apply to an injury caused by the discharging of a modified firearm in the moving vehicle)[4]; State Farm Fire & Cas. Co. v. Kohl, 131 Cal.App.3d 1031, 1034 (Cal. Ct. App. 1982)(exclusion did not apply to injury caused from truck driver's negligent moving of accident victim away from scene of the accident); Brown v. Dilworth, 331 So.2d 379, 379-80 (Fla. Dist. Ct. App. 1976)(exclusion did not apply to injuries arising out of children playing with a chemical found on a truck parked at apartment complex).

The standard for assessing the applicability of the "auto" exclusion, therefore, is not whether an automobile was present, was used in bringing the individual to the site of the injury, or even whether the tortious or negligent act occurred in the car.  Rather, as the words of the

---

[4] In fact, the court in Belmonte, a case relied on by Harleysville, emphasized that the exclusion could be inapplicable even though the accident occurred inside the vehicle, where the liability exists independently of any "use" of the car.  See Belmonte, 99 Cal.Rptr.2d at 663 (discussing State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d. 94 (Cal. 1973)).

policy indicate, the test is whether the injury "arises out of" the operation of the vehicle or the loading or unloading thereof.  In construing insurance policies, the words are to be given their customary, ordinary, and accepted meaning.  Hartford Cas. Ins. Co., 247 F.Supp.2d at 780 (citing Sullins v. Allstate Ins. Co., 340 Md. 503, 508 (Md. 1995)).  Affording these words their common understanding suggests meanings such as "originating from, growing out of, flowing from, or the like." Beretta, 117 F.Supp.2d at 493-94 (quoting EDP, 311 Md. at 230).  At bottom, this suggests at least some minimal causal relationship, even if not requiring proximate cause.

Moreover, as to the duty to defend in particular, exclusions have been held inapplicable where the facts related to the triggering of the exclusion were in dispute, a conclusion consistent with the "potentially covered " duty to defend rule followed in Maryland.  Compare 7416 Baltimore Ave. Corp. v. Penn-Amer. Ins. Co., 83 Md. App. 692, 699-700 (Md. Ct. Spec. App. 1990)(rejecting the applicability of the exclusion and distinguishing EDP on the grounds that the exclusion there was supported by an established fact accepted by all parties and was not a case where causation was a contested issue); with GLM, 88 F.Supp.2d at 430 (applying the exclusion because no set of facts would remove the case from the exclusion); and Northfield Ins. v. Boxley, 215 F.Supp.2d 656, 660-61 (D. Md. 2002)(holding that the "task at hand" was determining whether there is any dispute over material facts that would trigger the exclusion and applying the exclusion where it found no such dispute).

The law is clear that when there is doubt as to coverage and the duty to defend, such doubt is resolved in favor of the insured.  See  Hartford Cas. Ins. Co., 247 F.Supp.2d at 780 (citing Chantel Assocs. v. Mount Vernon Fire Ins. Co., 338 Md. 131, 145 (Md. 1995); see also Baltimore Ave. Corp., 83 Md. App. at 699.  Here, unlike in First Financial, Northfield, and EDP,

it is not agreed upon that the injury involved the vehicle at all.  As interpreted by the courts, this

exclusion is framed in terms of the instrumentality causing the harm. <u>Rubins</u>, 821 F.2d at 677.

The only suggestion of such an "instrumentality" found in any of the complaints in <u>Shaffer</u>

related to the condition of the "mud lot." Searching the discovery that was taken in <u>Shaffer</u>, as

the insured, but not the insurer attempting to avoid coverage, is entitled to do, one finds more

evidence that the causal "instrumentality" was the condition of the lot.  Further, even viewing

any evidence suggesting some involvement of the automobile in the light most favorable to

Harleysville, the circumstances do not begin to approach those present in the cases that found the

exclusion applicable.

     The insurer has an obligation to defend when there exists a "potentiality that the claim

could be covered under the policy." <u>Northfield</u>, 215 F.Supp.2d at 660 (quoting <u>Litz v. State</u>

<u>Farm Fire and Cas. Co.</u>, 346 Md. 217, 225 (Md. 1997)).  Based on the foregoing, any claim that

the "auto" exclusion applied was tenuous at best, and thus for the purposes of determining the

duty to defend, the exclusion is inapplicable.


**B.**

     The policy in question also contains an exclusion which mandates that the policy does

not apply to "any obligation of the insured under a worker's compensation, disability benefits or

unemployment compensation law or any similar law." (Plf.'s Mem. in Opp'n. at Ex. 1, the

policy.)

     Harleysville relies on <u>Nationwide Ins. Cos. v. Rhodes</u>, 127 Md.App. 231 (Md. Ct. Spec.

App.1999), in claiming that the "workers compensation" exclusion applies.  <u>Nationwide</u>

involved an insured's claim that it was entitled to coverage and a defense of a  home health aide's claim filed with the Worker's Compensation Commission. Id. at 233.  No matter the outcome of the underlying worker's compensation claim in that case, the insured was seeking a defense in a direct worker's compensation claim by one of its alleged employees, thus bringing the case under the policy's exclusion.  The insured put forth the rather tenuous argument that if the aide failed in convincing the Worker's Compensation Commission that she was an "employee" entitled to benefits, then she would no longer be a  "person eligible to receive benefits" under a worker's compensation law, as defined under the exclusion.  Thus, the insured argued, a duty to defend would lie. Id. at 244. The court correctly rejected that argument. Id. Cowan's position, however, is not so overreaching.

In this case, Cowan was not seeking a defense in a direct workers' compensation action against it.  In Shaffer, the relevant underlying case, neither Shaffer's complaint nor the third party complaint involved any "obligation of the insured under a worker's compensation, disability benefits or unemployment compensation law or any similar law."  Nothing presented by Harleysville, nor any other authority identified by this court, suggests the "workers compensation" exclusion at issue here applies to the circumstances in this case.

While Maryland does not follow the rule that insurance policies are to be construed most strongly against the insurer, GLM, 88 F.Supp.2d at 428, it does apply to insurance cases the general maxim of construing contracts against the drafting party. Home Exterminating Co., Inc., v. Zurich Amer. Ins. Group, 921 F.Supp. 318, 322 (D. Md. 1996); see also Rubins, 821 F.2d at 675.  Notably, Harleysville's exclusion did not contain the broader language contained in the policy at issue in Nationwide, which excluded coverage for claims by a "person eligible to

receive benefits."  Had Harleysville wanted its worker's compensation exclusion to be broader

and reach more than "obligations of the insured under a worker's compensation law," it could

have drafted the policy differently and excluded all persons entitled to receive such benefits.  It

did not.  Had Cowan incurred some obligation to the worker's compensation fund as a result of a

claim by Shaffer, and in turn sought indemnification from Harleysville for that monetary

obligation, perhaps the exclusion would apply. That was not the case here.  Harleysville, in its

response to Cowan's cross-motion for summary judgment, cites several cases for its assertion

that Maryland courts have followed the majority view that workers' compensation exclusions are

to be enforced. (Def.s' Mem. in Resp. at 7).  To be sure, they are to be enforced, but only where

applicable.  The exclusion here is inapplicable.

   That Shaffer eventually received worker's compensation benefits does not alter this

conclusion. First, it is irrelevant. At issue here is Harleysville's duty to defend the third party

complaint in <u>Shaffer</u>, not any claim under a worker's compensation or similar law.  Second, it is

extrinsic evidence coming to light in the deposition testimony of Shaffer in <u>Shaffer</u>, which

Harleysville is prohibited from relying on in denying Cowan a defense.  <u>See</u> <u>Montgomery Cnty.</u>

<u>Bd. of Educ.</u>, 154 Md.App. at 510-511.

## C.

   The policy also contains an "employer's liability" exclusion which mandates that the

policy does not apply to "bodily injury" to "an employee of the insured arising out of and in the

course of employment by the insured or performing the duties related to the conduct of the

insured's business." (Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)  The exclusion applies "whether

the insured may be liable as an employer or in any other capacity" and "to any obligation to

share damages with or repay someone else who must pay damages because of the injury," but "does not apply to liability assumed by the insured under an 'insured contract.'" (Id.).[5]

First, Harleysville's reliance on Hastings v. William H. Knott, Inc., 114 Md. App. 403 (Md. Ct. Spec. App. 1997), is inapposite.  In Hastings, the dispute was over whether two workers, opposing parties in the underlying tort suit, were co-employees where one was a subcontractor and the other a temporary laborer. Id. at 404-05.  The court held that they were co-employees, thus triggering the co-employee exclusion in the insurance policy. Id. at 407-08.  The exclusion stated that while employees counted as an "insured," employees were not covered for injuries to co-employees in the course of employment. Id. at 404.  The "employer's liability" exclusion at issue in this case is different from the one in Hastings, and, in any event, there is no question about the relationship between Shaffer and Cowan.[6]

Harleysville also relies on Riviera Beach Volunteer Fire Co., Inc. v. Fid. and Cas.Co. of New York, 388 F.Supp. 1114 (D. Md. 1975).  While Riviera Beach offers more guidance, it is not helpful to Harleysville's cause.  The exclusion in Riviera Beach was styled more as a "fellow employee exclusion" than the "employer's liability" exclusion here, but the court's delineation of the issues is relevant and instructive. There, similar to here, the court was faced not with a direct claim between co-employees, but rather a question of the duty to defend a third-party

---

[5] Under the policy, "insured contract" is defined as: "That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in conjunction with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." (Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)

[6] In Hastings, a workers' compensation exclusion was at issue but, finding the co-employee exclusion applicable, the court did not address it.

claim for indemnification or contribution against an employee of the insured.  Riviera Beach,

388 F.Supp. at 1117-18.  The exclusion in  Riviera Beach read: "the insurance with respect to

any person or organization other than the named insured . . . does not apply: . . . (2) to any

employee with respect to injury to . . . or death of another employee of the same employer."  Id.

at 1123.  In considering the applicability of this "co-employee" exclusion the court reasoned:

> The phrase 'with respect to' indicates that the exception encompasses any suit
> alleging damages arising out of an 'injury to . . . or death of another employee of
> the same employer,' whether that suit is between two co-employees or between
> one employee and any other person trying to recover damages in connection with
> an injury to, or the death of, a fellow employee of the person being sued.

Id.  Riviera Beach, however, made a critical distinction between cases where the third party

complaint alleges that the insured's liability is based in tort and its own negligence, and cases

where the third party complaint bases liability on the insured's alleged assumption thereof

through a contract. Id. at 1123. As Riviera Beach noted, courts have found a duty to defend in

the latter cases, even in the face of similar co-employee exclusions. Id.[7]

In this case, Harleysville's own policy seems to recognize the critical distinction made in

Riviera Beach.  Harleysville's "employer's liability" exclusion states that it applies "whether the

insured may be liable as an employer or in any other capacity" and "to any obligation to share

---

[7] Harleysville, in support of its claims that both the "workers compensation" and
"employer's liability"exclusions apply, also cites Riviera Beach in its response to Cowan's
cross-motion for summary judgment, pointing to the court's statement that "if a person is
considered as being an employee of another for purposes of the state Workmen's Compensation
Act, he should also be so considered for purposes of determining the applicability of
exclusionary provisions in an insurance contract." (Def.s' Mem. in Resp. at 7).  This statement
by the court was solely addressing the issue of whether the employee in question could be
considered a co-employee for purposes of a "co-employee exclusion," and has no direct bearing
on the issues in this case.

damages with or repay someone else who must pay damages because of the injury," but "does not apply to liability assumed by the insured under an 'insured contract.'" (Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)  The first part of the above cited language suggests exclusion of coverage where a third party complaint seeks indemnification or contribution on the basis of the insured's own negligence, as in Riviera Beach.  However, the exception to the exclusion tracks the distinction recognized in Riviera Beach, whereby the duty to defend does attach when the third party complaint bases liability on a contractual assumption of such liability.

Looking to Linens N Things' third party complaint, two theories of liability are raised in separate counts.  In Count I, Linens N Things alleges that "it is entitled to insurance coverage, a defense, indemnification and to be held harmless by Harleysville Insurance Company and Cowan Systems, Inc. through their (Cowan's) contract with Linens N Things and through a policy of insurance issued to Cowan Systems In." (Plf.'s Mem. in Opp'n at Ex. 3 ¶ 3).  In Count II, Linens N Things alleges that "third-party defendants Harleysville Insurance Company and Cowan Systems, Inc. are Joint Tortfeasors and this defendant/third-party plaintiff demands Joint Tortfeasor Contribution...and apportionment of negligence." (Id. ¶ 5).

I recognize, without deciding, that the second count may sound in tort and be based on a theory of negligence that could trigger the "employer's liability" exclusion at issue here. However, Count I clearly bases liability on the assumption of liability in a contract between Cowan and Linens N Things, placing it outside of the exclusion under Riviera Beach and, as further addressed below, under the "insured contract" exception to the exclusion under the policy itself.  If any claims potentially come within the policy coverage, the insurer is obligated to defend all claims. Utica Mut. Ins. Co., 130 Md.App. at 383; see also Montgomery Cnty. Bd. of

Educ., 154 Md.App. at 512; and Hartford, 247 F.Supp.2d at 782-783. That one cause of action is

not covered by the policy does not excuse the insurer if a separate cause of action is covered. See

Utica, 130 Md.App. at 383.

  Under the terms of the policy itself, the exclusion "does not apply to liability assumed by

the insured under an 'insured contract.'" (Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)  Cowan

entered into such a contract with Linens N Things.  Under the "Truckload Transportation

Agreement" ("the Agreement"), Cowan agreed to "indemnify, defend and hold harmless" Linens

N Things "from and against any and all claims, actions, losses, damages, expenses, judgments,

and costs...arising out of injury to persons caused in whole or in part" by Cowan's performance.

(Plf.'s Mem. in Opp'n. at Ex. 7, truckload transportation agreement.)  Cowan therefore, under

the Agreement, agreed to indemnify Linens N Things for all damages related to Cowan's

performance under the contract, even where Cowan itself is only partially responsible.  Had

Linens N Things been found substantially liable, and Cowan only minimally so, Cowan, to

borrow the language from Harleysville's own definition of an "insured contract," would have

had to "assume the tort liability of another party to pay for 'bodily injury' or 'property damage.'

(Plf.'s Mem. in Opp'n. at Ex. 1, the policy.)  Thus, by the definition of "insured contract"

provided in Harleysville's own policy, the "Truckload Transportation Agreement" is an insured

contract.

  The existence of the "insured contract," in the form of the Truckload Transportation

Agreement, was the very basis for Linens N Things bringing Count I of its third party complaint.

(Plf.'s Mem. in Opp'n at Ex. 3 ¶ 3). Based on the foregoing, as was the case with the "auto" and

"worker's compensation" exclusions, the "employer's liability" exclusion is inapplicable here.

## II

The insurer has an obligation to defend when there exists a "potentiality that the claim could be covered under the policy." <u>Northfield</u>, 215 F.Supp.2d at 660 (quoting <u>Litz v. State Farm Fire and Cas. Co.</u>, 346 Md. 217, 225 (Md. 1997). As explained above, any claim that the "auto" exclusion applied was tenuous at best, the "workers compensation" exclusion simply does not apply, and the "employer's liability" exclusion, by its own terms, was rendered inapplicable by the existence of an "insured contract." Thus, there was, at the very least, a potentiality that the third-party claim could be covered under the policy. The record presents no genuine issues of material fact that would bear on the duty to defend, and the evidence before the court, even viewed in the light most favorable to Harleysville, cannot support a conclusion that there was no potentiality of coverage under the policy. Harleysville had a duty to defend. For the reasons stated above, the defendant's motion will be denied and the plaintiff's motion will be granted.[8]

A separate order follows.

_____September 30, 2005_____                    _____/s/_____
Date                                           Catherine C. Blake
                                               United States District Judge

---

[8]Cowan is therefore entitled to fees and costs incurred in defending the <u>Shaffer</u> lawsuit, as well as those incurred in bringing this declaratory judgment action. <u>See</u> <u>Riviera Beach</u>, 388 F.Supp. at 1120; <u>see</u> <u>also</u> <u>Bankers and Shippers Ins. Co. of New York v. Electro Enterprises, Inc.</u>, 287 Md. 641, 660 (Md. 1980).